THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SALMINEO KIMBALL, Defendant-Appellant.

First District (1st Division)  No. 1—87—3040

Opinion filed March 29, 1993.

Samuel J. Cahnman and Ronald D. Haze, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Monica L. Willis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant Salmineo Kimball was convicted of the murder of decedent Anthony Brown and of the attempted murder of Dwayne Brown. Defendant was sentenced to concurrent prison terms of 30 and 6 years, respectively. Defendant appeals both his convictions.

Vernell Robinson testified for the State that on July 30, 1986, he worked at McDonald's located at 47th Street and Cottage Grove Avenue

in Chicago. On July 30, at about 10 p.m., Robinson saw defendant walk around a wooden fence, which separated a vacant lot from the Mc-Donald's parking lot, and proceed towards the first parking stall. At the same time, decedent was walking towards his car in the parking lot, while carrying his child. Defendant stood directly adjacent to the bumper of decedent's car with a gun in his hand. Robinson testified that he shouted a warning to decedent about defendant being armed and then took cover himself. Robinson saw a flame come from a gun at the fence and heard shots being fired. He ran inside the McDonald's to get a security guard and upon returning to the lot saw the decedent being taken from the scene.

Nicole Wilson also testified for the State. On July 30, Wilson was walking through the vacant lot and saw defendant and his codefendant coming towards her, walking fast. Codefendant walked up to the wooden fence, leaned over it and shot four times at decedent. Wilson testified that she also saw a gun in defendant's hand.

Next, Dwayne Brown testified that at about 10 p.m. on July 30, he and his brother Larry were driving by the McDonald's when they saw their brother's (decedent's) car. Larry slowed down as he approached his brother's car. While nearing the parking lot, Dwayne saw a hand with a gun reach over the wooden fence and shoot. Dwayne testified that then, defendant aimed a gun directly at his face and began firing while they were proceeding past the lot. Larry and Dwayne eventually picked up decedent and drove him to the hospital.

Finally, Detective Allen Szudarski testified for the State that both Wilson and Dwayne Brown identified defendant's photograph as the gunman who shot at Dwayne. Additionally, Dwayne and Robinson identified defendant at a lineup as the gunman.

Defendant testified on his own behalf that on July 30 at 10 p.m., he was at his girl friend's apartment. Defendant stated that he watched television, then went outside and talked with a friend. Further, defendant testified that two days prior to the shootings, he was taken to a hospital for a knee injury, where his leg was wrapped and he was issued crutches. Defendant claims that on July 30, he was using a cane to walk. Defendant denied any involvement in the shooting.

■ On appeal, defendant first contends that the circuit court erred in refusing his tendered jury instruction and related verdict form for the offense of aggravated assault. Defendant argues that aggravated assault is a lesser-included offense of attempted murder. An included offense is an offense which is established "by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev.

Stat. 1985, ch. 38, par. 2—9(a).) Generally, in order to be a lesser-included offense, all the elements of the lesser offense must be included within the greater offense. (*People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289.) A person commits aggravated assault when without lawful authority he engages in conduct which places another in a reasonable apprehension of receiving a battery while using a deadly weapon. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—1, 12—2.) An instruction on a lesser offense is appropriate " 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' " (*People v. Bryant* (1986), 113 Ill. 2d 497, 507, 499 N.E.2d 413, quoting *Keeble v. United States* (1973), 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847, 93 S. Ct. 1993, 1995.) Moreover, an included offense instruction " ' "is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." ' " *Bryant*, 113 Ill. 2d at 507, 499 N.E.2d at 417-18, quoting *People v. Cramer* (1981), 85 Ill. 2d 92, 100, quoting *Sansone v. United States* (1965), 380 U.S. 343, 349-50, 13 L. Ed. 2d 882, 887-88, 85 S. Ct. 1004, 1009.

In *Bryant*, the supreme court held that the language of the charging instrument described an act constituting criminal damage to property as part of the attempted burglary. Because the indictment described the lesser-included offense of criminal damage to property and the evidence supported a guilty verdict of the lesser crime and an acquittal of the greater, the supreme court held that an instruction on that offense should have been given. *Bryant*, 113 Ill. 2d at 506, 499 N.E.2d at 415-16.

Defendant also cites *People v. Krueger* (1988), 176 Ill. App. 3d 625, 531 N.E.2d 396, as authority that an aggravated assault instruction is proper when attempted murder is charged. In *Krueger*, the appellate court held that the evidence would support a conviction for aggravated assault because although the victim was allegedly visible through the sheer drapes of the living room window, no shots were fired through that window. Furthermore, the indictment charged that the shots were fired at the victim's house rather than at anyone inside the house. (*Krueger*, 176 Ill. App. 3d 625, 531 N.E.2d 396.) The court reasoned that the evidence supported a finding that the shots were intended to scare the victim, rather than to kill him. *Krueger*, 176 Ill. App. 3d 625, 531 N.E.2d 396.

Further, the appellate court recently held that it was error not to instruct the jury on the uncharged offense of aggravated assault in a case where attempted murder was charged. (*People v. Ross* (1992), 226 Ill. App. 3d 392, 589 N.E.2d 854.) In *Ross*, while the defendant was

"still moving forward," he turned toward the officer and pointed a pistol at him. The officer testified that he immediately bent down, "his revolver at the ready, stood up, and fired three shots, wounding defendant." The defendant stumbled and then resumed his flight. (*Ross*, 226 Ill. App. 3d at 394, 589 N.E.2d at 855.) We note that there was no evidence that the defendant actually fired any shots at the officer. The appellate court reasoned that the above testimony supported the conclusion that the jury could have found the police officer "feared being struck by a bullet, the requisite element of reasonable apprehension of a battery, to support a conviction for aggravated assault." (*Ross*, 226 Ill. App. 3d at 395, 589 N.E.2d at 856.) The court further found that since the charging instrument based the charge of attempted murder on defendant's actions of "aiming a gun" at the officer, the scope of that language was sufficiently broad to accommodate the element of the officer's apprehension, thereby providing an outline of the offense of aggravated assault. *Ross*, 226 Ill. App. 3d at 395, 589 N.E.2d at 856.

In the instant case, the indictment alleged that defendant, "without lawful justification with the intent to commit the offense of murder, intentionally and knowingly attempted to kill Dwayne Brown by shooting at him with a gun." The indictment does not contain language pertaining to placing Dwayne in reasonable apprehension of receiving a battery as is an element of aggravated assault. (See Ill. Rev. Stat. 1985, ch. 38, par. 12—1.) The language of the charging instrument in the instant case differs from that in *Ross* because it states that defendant "attempted to kill Dwayne Brown by *shooting* at him with a gun" (emphasis added) as opposed to *aiming* a gun. Thus, in the case at bar, the charging instrument is not broad enough to accommodate the element of apprehension and thereby provide an outline for the offense of aggravated assault.

Moreover, the facts of defendant's above-cited cases differ. In the instant case, the intended victim, Dwayne Brown, testified that defendant shot a gun directly at his face. Unlike in *Krueger* and *Ross*, there is no evidence that defendant merely shot in the general direction of Dwayne in an apparent attempt to scare him or merely aimed a gun at Dwayne. Therefore, the evidence does not support a conviction of the alleged lesser-included offense of aggravated assault. Rather, the evidence indicates that defendant intended to kill Dwayne. Since an outline of the offense of aggravated assault is not contained in the charging instrument and the evidence does not support a conviction of that charge, we find that the circuit court properly refused to give the proffered aggravated assault instruction and verdict form.

■ Lastly, defendant contends that the evidence at trial was insufficient to prove the elements of accountability for decedent's murder. A

person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2; see also *People v. Bell* (1983), 113 Ill. App. 3d 588, 447 N.E.2d 909.) Evidence that a defendant voluntarily attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, makes him criminally liable for any wrongdoings committed by the other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof. (*People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 483 N.E.2d 944.) A trier of fact's conclusion that a defendant is legally accountable for a criminal act will not be set aside on review unless the evidence is so improbable, unsatisfactory, or unreasonable that a reasonable doubt of defendant's guilt exists. *People v. Foster* (1990), 198 Ill. App. 3d 986, 556 N.E.2d 1214.

In determining whether accountability has been established, the trier of fact may consider factors such as defendant's presence without disapproving or opposing the commission of the crime, a continued close affiliation with the codefendants after the commission of the crime, defendant's failure to report the incident or to confide in anyone about it and defendant's flight from the scene. (*People v. Green* (1988), 179 Ill. App. 3d 1, 15-16, 535 N.E.2d 413, 421-22.) In the case at bar, defendant came armed with codefendant. He stood in tacit agreement with codefendant as codefendant shot at decedent. Furthermore, defendant fired his gun directly at Dwayne Brown's face and then fled with codefendant. The evidence is not so improbable or unreasonable as to create a reasonable doubt of defendant's guilt; therefore, we affirm defendant's conviction of decedent's murder based upon the theory of accountability.

For the foregoing reasons, we affirm the convictions of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.